UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOAN T. SCHRADER,

                    Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.

_____

**REPORT AND
RECOMMENDATION**

08-CV-119
(FJS/VEB)

## I. INTRODUCTION

In July of 2005, Plaintiff Joan T. Schrader applied for disability insurance benefits ("DIB") and supplemental security ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since June 1, 2005, due to various physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, through her attorneys, Olinsky & Shurtliff, Howard Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on July 7, 2005, alleging disability beginning on June 1, 2005. (T at 52, 249).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, on June 7, 2007, before ALJ Alfred R. Tyminski. (T at 253).  Plaintiff appeared with her attorney and testified. (T at 256-270).

On June 28, 2007, the ALJ issued a decision denying Plaintiff's applications. (T at 23-30).  Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on January 11, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

Plaintiff, through counsel, commenced this action on January 31, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on May 22, 2008. (Docket No. 8). Plaintiff filed a supporting Brief on July 3, 2008. (Docket No. 10).  The Commissioner filed a Brief in opposition on August 18, 2008. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2008.  He further concluded that Plaintiff had not engaged in substantial gainful activity since June 1, 2005, the alleged onset date. The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Act: degenerative changes of the cervical spine, degenerative disc disease and mild canal stenosis of the lumbar spine, and degenerative joint disease of the left shoulder. (T at 25).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 26).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform the full range of sedentary work. (T at 26).  The ALJ also found that Plaintiff had

the RFC to perform her past relevant work as an appointment scheduler. (T at 27).

Accordingly, the ALJ determined that Plaintiff was not under a disability, as that term is

defined under the Social Security Act, from the alleged onset date through the date of his

decision. (T at 27-28).  As noted above, the ALJ's decision became the Commissioner's

final decision on January 11, 2008, when the Appeals Council denied Plaintiff's request for

review.  (T at 5-7).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers

five (5) principal arguments in support of this position.  First, Plaintiff contends that the ALJ

erred by finding that her depression and anxiety were non-severe impairments.  Second,

Plaintiff argues that the ALJ did not correctly weigh the assessment of her treating

physician.   Third, she asserts that the ALJ's RFC assessment was not supported by

substantial evidence.  Fourth, Plaintiff contends that the ALJ erred when he concluded that

Plaintiff was capable of performing her past relevant work.  Fifth, she argues that the ALJ

did not properly assess her credibility.  This Court will address each argument in turn.

### a.    Severity of Mental Impairments

When evaluating mental impairments, the Regulations require the ALJ to apply a

"special technique" at the second and third steps of the review in addition to the customary

sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R.

§ 404.1520a).   The special technique requires an initial determination as to whether the

Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If

so, the ALJ must then rate the degree of Plaintiff's functional limitation resulting from the impairment in four broad categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. <u>See</u> 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, at step two of the sequential evaluation process, the ALJ determined that Plaintiff did not have a "severe" psychiatric impairment. (T at 26). The ALJ cited only two facts in support of this assessment: (1) Plaintiff never received treatment from a mental health specialist and (2) Plaintiff's primary care doctor (Marie Castillo) opined that although Plaintiff suffered from depression, she had essentially no mental limitations. (T at 229-31).

The ALJ did not reference the special technique or document a specific finding as to the degree of limitation in each of the functional areas. In <u>Kohler v. Astrue</u>, the Second Circuit found the failure to apply the special technique was legal error. 546 F.3d at 269. Specifically, the court concluded that the ALJ did "not appear to have evaluated each of the four functional areas, and did not record specific findings as to [the Plaintiff's] degree of limitation in any of the areas." <u>Id.</u> at 267. Because the ALJ failed to "conduct a distinct analysis" of the issue, "it [was] not clear [to the Court] whether the ALJ adequately considered the entire record when determining the severity of [the Plaintiff's] impairment[.]"

7

Id. at 267-68.

Although Kohler suggests the possibility that failure to conduct a distinct analysis at stage two might be harmless error in some circumstances, "[v]irtually every court in this Circuit that has encountered this issue . . . has reversed and remanded the matter to the Commissioner for further proceedings" when the ALJ failed to properly apply the special technique. Concepcion v. Astrue, No. 09-cv-01376, 2010 WL 2723184, at *11 (D.Conn. July 8, 2010)(collecting cases); but see Arguinzoni v. Astrue, No. 08-CV-6356T, 2009 WL 1765252, at *9 (W.D.N.Y. June 22, 2009)(finding that failure to provide function-by-function analysis was harmless error).

In the present case, this Court finds that a remand is necessary because the ALJ did not provide a function-by-function analysis as required by the special technique and his decision provides scant evidence that he adequately considered the entire record when determining the severity of Plaintiff's mental impairment.

For example, the ALJ rendered a finding of "non-severe," but did not discuss the assessment of Dr. Kristen Barry, a consultative examiner.  Dr. Barry noted that Plaintiff "[a]ppeared helpless, dysphoric, and down." (T at 193).  She described Plaintiff's mood as "[d]ysthymic and frustrated." (T at 193).  Dr. Barry concluded that Plaintiff was able to follow and understand simple directions and instructions.  (T at 194).  In addition, she found that Plaintiff could perform both simple and complex tasks independently and maintain her attention and concentration. (T at 194).  However, Dr. Barry also determined that Plaintiff appeared "to have a lot of difficulty at this time handling stressors." (T at 194).  While Dr. Barry assessed that Plaintiff was able to relate adequately with others and make appropriate decisions, "her stressors sometimes interfere with her work performance and

8

her socialization." (T at 194). Dr. Barry indicated that Plaintiff's allegations were consistent with the exam results, diagnosed dysthymic disorder, and characterized Plaintiff's prognosis as guarded to fair. (T at 194).

A State Agency review psychiatrist reviewed Plaintiff's medical record and completed a Mental Residual Functional Capacity Assessment. The review psychiatrist opined that Plaintiff was not significantly limited in many areas of functioning, but was moderately limited with regard to: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without a reasonable number of interruptions; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of each other. (T at 196-97).

The foregoing evidence was highly suggestive of more than mild limitations in the categories of social functioning and maintaining concentration, persistence, or pace. However, the ALJ did not discuss either Dr. Barry's consultative report or the State Agency review psychiatrist's assessment when rendering his decision that Plaintiff's mental impairment was not severe. This was clearly error. The Regulations require an ALJ to "evaluate every medical opinion." 20 C.F.R. § 416.927(d); see 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)."). This Court cannot determine whether the ALJ actually considered these

reports and, if they were considered, whether the ALJ had an adequate basis for disregarding the findings.

Moreover, the ALJ's reliance on Dr. Castillo's medical source statement is problematic, as Dr. Castillo's assessment of essentially no mental limitations appears to be at odds with her own treatment notes.  For example, a December 2005 progress note indicated a diagnosis of depression, being treated with prescription anti-depressants. (T at 136).  Plaintiff's depression was described as "worsening" and causing sleep difficulties, decreased energy, and social isolation. (T at 137).  In a March 2007 note, Dr. Castillo indicated that Plaintiff was experiencing "[i]ncreased anxiety with depression as well" and prescribed anti-anxiety medication. (T at 241).  Absent this discrepancy between the medical source statement and the treatment notes, the Court would be inclined to find that the ALJ's apparent failure to apply the special technique was harmless error.  However, the ALJ's conclusory decision to afford Dr. Castillo's medical source statement controlling weight cannot be sustained in isolation, particularly because this Court cannot determine whether the ALJ considered that statement in light of Dr. Castillo's clinical notes, the findings of the consultative examiner, and the State Agency review psychiatrist's assessment.

As noted above, in Kohler, the Second Circuit suggested, but did not find, that if an ALJ implictly complied with the special technique by making determinations regarding the claimant's degree of limitation, then the failure to strictly document the special technique could be harmless error. See Kohler, 546 F.3d at 269 n. 9.

However, where (as here) the court cannot identify findings regarding Plaintiff's limitations in the functional areas, nor discern whether the ALJ considered all the evidence

relevant to those areas, the court cannot say the decision reflected an application of the correct legal standard, and remand is warranted for proper application of the special technique. Id. at 269. In this case, there is no indication in the ALJ's decision that he made findings regarding a Plaintiff's degree of limitation in the four areas.  In light of the evidence of record indicating Plaintiff suffered from limitations in at least two of the functional areas, this Court concludes that the ALJ's failure to apply the special technique is error warranting remand. See 20 C.F.R. § 404.1520a(e)(2); Kohler, 546 F.3d at 265-66.

### b.   Treating Physician

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, an ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Dr. Castillo, Plaintiff's treating physician, opined that Plaintiff could sit for about 2 hours in an 8-hour workday (and continuously sit for only 1 hour) and stand/walk for about 2 hours in an 8-hour workday. (T at 226).  Dr. Castillo indicated that Plaintiff would need to shift positions at will from sitting, standing or walking; and would need 2-3 unscheduled breaks per day, lasting 3-5 minutes. (T at 227).  She further found that Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds. (T at 228).

The ALJ gave "little weight" to Dr. Castillo's assessment and supported his decision in this regard with two sentences.  Specifically, he indicated that Dr. Castillo's assessment "appears to be based on the claimant's subjective complaints rather than objective clinical findings." (T at 26).  In addition, the ALJ noted that "[r]ecent medical records indicate that the claimant has been helped by physical therapy." (T at 26).

The ALJ's decision is problematic in several respects.  First, it was error for the ALJ to dismiss Dr. Castillo's opinions simply because they were based, at least in part, on Plaintiff's subjective complaints. See McCarty v. Astrue, 05-CV-953, 2008 WL 3884357, at *6 (N.D.N.Y. Aug. 18, 2008) (finding that "reliance on Plaintiff's subjective complaints is not a valid basis for rejecting [the treating physician's] opinion."). Indeed, "a patient's report of complaints, or history, is an essential diagnostic tool." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003).

Second, because the ALJ found Dr. Castillo's opinions were not based on objective

12

medical evidence, he had an obligation to re-contact the physician to determine the basis for her opinions. See 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also Clark, 143 F.3d at 118 (internal citations omitted) ("[T]he lack of specific clinical findings in the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the physician's opinion."); Taylor v. Astrue, CV-07-6439, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"). There is no indication in the record that the ALJ re-contacted Dr. Castillo for an explanation of her opinions.

Third, as discussed further below, Dr. Castillo's conclusion that Plaintiff could not sit for more than 2 hours in an 8-hour workday is essentially uncontradicted by the record. A careful examination of the record undermines the ALJ's cited reasons for concluding that Plaintiff was capable of sitting for longer periods.

Accordingly, this Court finds that remand is required for a reevaluation of Dr. Castillo's opinion in accordance with the treating physician's rule and consistent with the ALJ's duty to develop the record.

### c. RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must

include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff has the RFC to perform the full range of sedentary work.  In particular, the ALJ found that Plaintiff could lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for at least 2 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; push and/or pull 10 pounds occasionally and less than 10 pounds frequently; and climb, balance, stoop, kneel, crouch or crawl occasionally. (T at 26).

This Court finds this RFC determination must likewise be revisited on remand.  First, it is inconsistent with Dr. Castillo's assessment.  As noted above, the ALJ's consideration of Dr. Castillo's assessment was flawed because the ALJ improperly dismissed the assessment as being based on subjective complaints and failed to re-contact Dr. Castillo before disregarding her opinion.

Second, the ALJ's conclusion that Plaintiff can sit for 6 hours in an 8-hour workday is not supported by substantial evidence.  The ALJ's finding in this regard is based upon the opinion of Dr. Shayevitz and Plaintiff's activities of daily living. (T at 27).  However, Dr. Shayevitz found that Plaintiff had "definite limitations to any prolonged sitting . . . ." (T at

14

183).  The ALJ noted this finding (T at 26), but made no attempt to reconcile it with his RFC determination.  Moreover, none of the daily activities cited by the ALJ (caring for an adult disabled daughter, intermittent babysitting, cooking, light housekeeping, laundry, shopping) are indicative of an ability to sit for 6 hours in an 8-hour workday.

The lack of evidence concerning an ability to sit for prolonged periods significantly undermines the ALJ's conclusion that Plaintiff retains the RFC to perform the full range of sedentary work.  Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996).

In this case, Plaintiff's treating physician opined that she could only sit for 2 hours in an 8-hour workday and the consultative examiner concluded Plaintiff had "definite" limitations as to prolonged sitting.  The ALJ did not adequately address either of these findings and cited no other evidence in support of this aspect of his RFC determination. As such, this issue must be revisited on remand.

### d.    Past Relevant Work

"Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, 98 Civ 7835, 1999 WL 813350, at *8 (S.D.N.Y. Oct.7, 1999) (citations

15

omitted).

An ALJ may rely on the claimant's statements, which "are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62. "Adequate documentation" will include "information about those work demands which have a bearing on the medically established limitations." SSR 82-62.

Thus, when a claimant has limitations due to a mental or emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62; see also Kerulo, 1999 WL 813350, at *9 (finding error where the ALJ found the Plaintiff's past relevant work did not involve "high levels of stress" but neither the testimony nor the documentary record provided evidence about the nature of her past work).  The ALJ's decision "must contain" a "finding of fact as to the physical and mental demands of the past job/occupation." SSR 82-62.

In this case, the ALJ concluded that Plaintiff could perform her past relevant work as an appointment scheduler.  (T at 27).  The ALJ's conclusion in this regard was flawed. In particular, the ALJ recognized that Plaintiff's work as an appointment scheduler "required sitting for most of the day." (T at 27).  However, as discussed above, the record does not contain substantial evidence to support the ALJ's finding that Plaintiff maintained the RFC to satisfy that occupational requirement.  Indeed, the evidence strongly indicated that Plaintiff was limited with regard to her ability to sit for prolonged periods.  The ALJ also did not make any finding concerning the mental demands of the past relevant work.  This was

16

a material omission in light of the consultative psychiatric examiner's finding that Plaintiff's "stressors" would interfere with her work performance. (T at 194).  The ALJ's past relevant work analysis should therefore be addressed anew on remand.

### e.   Credibility

The claimant's credibility is an important element in Social Security disability claims, and such evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other

symptoms ....

       Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ...

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.     [Plaintiff's] daily activities;
2.     The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.     Precipitating and aggravating factors;
4.     The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.     Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.     Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.     Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ concluded that Plaintiff's allegations of disabling pain and other symptoms were "not fully credible." (T at 27). However, the ALJ erred by failing to determine in the first instance whether Plaintiff's medically determinable impairments could

reasonably be expected to produce some or all of the alleged symptoms.  In addition, Plaintiff testified that she could not sit "very long" because her "tail bone" becomes aggravated, causing her pain. (T at 264).  The ALJ discounted this statement (along with Plaintiff's other complaints of pain and limitations) based upon Dr. Shayevitz's opinion and Plaintiff's activities of daily living.  However, as discussed above, neither the opinion nor the activities actually contradict Plaintiff's testimony concerning her ability to sit for prolonged periods.  Accordingly, the issue of Plaintiff's credibility should be revisited on remand.

>   **3.   Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for

judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 4, 2010
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

20

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 4, 2010

Victor E. Bianchini
United States Magistrate Judge